ILLINOIS CENT. R. CO. v. KING.

[88 South. 322, No. 21787.]

1. CARRIERS. *May contract to carry articles though no tariff rate filed; liable for loss of jewelry though no tariff rate filed; "Public highways;" ."Common carriers."*

Under section 184 of the state Constitution of 1890, and under section 4839, Code of 1906 (section 7624, Hemingway's Code), railroads are common carriers and public highways over which persons have a right to ship articles not dangerous to persons or other property; and a railroad may contract to carry articles though it has filed no tariff rate with the State Commission, and where it accepts jewelry and other articles of special value it is liable for their loss resulting from dishonesty or negligence of its employees.

2. CARRIERS. *Agent's failure to specify all articles in bill of lading held waiver of nonliability clause.*

Where a shipper carries articles of freight to a freight agent of a railroad company in charge of its business, and discloses the nature and value of the articles to be shipped by freight, and such agent writes only one article in the bill of lading when the shipment contains many articles, the company cannot escape responsibility for the negligence or dishonesty of its employees because the bill of lading contains a clause that "no carrier will be liable in any way for any documents, specie, or for any articles of extraordinary value not specifically rated in the published classification or tariff, unless a special agreement to do so and the stipulated value of the articles are indorsed hereon." Where the information is furnished the agent in charge, and he fails to write the data on the bill of lading, it must be treated as having waived the provision.

APPEAL from circuit court of Attala county.

HON. T. B. CARROLL, Judge.

Action by T. J. King against the Illinois Central Railroad Company. Judgment for plaintiff, and defendant appeals. Affirmed.

*May & Sanders,* for appellant.

The box in question was delivered to, accepted by, and receipted for by appellant as crockery. Instead of containing crockery only, the box, according to plaintiff's testimony and the jury's verdict, actually contained articles of jewelry. The rule is firmly established that if a shipper is guilty of any fraud or imposition in respect to the carrier as by concealing or mis-stating the value or nature of the article, he cannot hold the carrier liable beyond the apparent value or character, as stated by him, since he has deprived the carrier of the compensation of which it is entitled, and has caused it to relax its vigilance in carrying the goods of exceptional value. The authorities which sustain this rule, are collated in an extensive note to the case of *Harrington* v. *Wabash Railroad Company* (Minn.), 23 L. R. A. 21 N. S. 745, et seq., and in the monographic note appended to the case of *Ellison* v. *Adams Express Company* (Ill.), 1915A, L. R. A. (N. S.) 502 *et seq.*

Appellee sought to avoid the application of this rule by undertaking to prove a special contract, resulting by implication from alleged facts stated by the shipper to the carrier's agent to the effect that the shipper advised the agent that the box contained articles of exceptional value, in the form of heir looms, jewels, etc. This effort on the part of appellee cannot succeed first because the written contract cannot be varied or contradicted by parol testimony, as to a contemporaneous verbal agreement; and second, because such alleged verbal agreement was not endorsed on the written contract, and without such endorsement the verbal agreement could not bind the carrier under the express language of bill of lading in paragraph 6,

above quoted; and third, because the verbal agreement, even if endorsed on the written contract, could not bind the carrier, as such contract was prohibited by the classification and tariffs of the carrier.

The way bill and bill of lading both show that this shipment was received and handled subject to the published classifications and tariffs of the carrier.

If the shipment in question had been an interstate movement it must be conceded that no right could grow out of the alleged contract, and no obligations could be imposed by it, because it was in conflict with the supreme legislative authority of the country, and would, therefore, be illegal and void. A clear statement of the rule applicable in such case may be found in the case of *Cicardi Bros. Fruit Produce Company* v. *Pennsylvania Company*, 213 S. W. 533, reading as follows: "Under the act (Elkin's Act) a published tariff so long as it is in force, has the effect of a statute and is binding alike on carrier and shipper. *Pennsylvania Railway Co.* v. *International Coal Co.*, 230 U. S. 184-197, 33 Supreme Court 893, 57 Law Edition, 1446, Ann. Cas. 1915A. 315. And with respect to the service, as fixed by the filed regulations applies not only to rates, but also to other stipulations relating to service and facilities within the purview of the act. *Southern Railway Company* v. *Prescott*, 240 U. S. 632, 36 Supreme Court 469, 60 Law Edition 836."

In the case of *Pacific Fruit and Produce Company* v. *Northern Pacific Railway Co.* (Washington), 180 Pac. 854, it is said: "A carrier in interstate commerce can enter into no contract of transportation for which there is not express authority in its filed and published tariffs. See, also, *T. & P. Railroad Co.* v. *American Tie Co.*, 234 U. S. 138, 34 Supreme Court, 885, 58 Law Edition, 1255; *Planing Mill Company* v. *Railroad*, 112 Miss. 148, 72 So. 884."

The decided cases emphatically declare that the tariffs, so long as they are in effect, have the same binding force as legislative enactments, and unless authority can be

found in the tariffs for making a special contract, none can be made, and they are adjudged to be contrary to public policy, and are therefore, held to be illegal and void, as declared by our own court in the *Planing Mill case, supra*.

That state statutes similar to the Mississippi statute, *supra*, must be relied upon as defining the rights of the shipper, and the obligations of the carrier has been declared in the following cases: *Mollahan* v. *A. T. & S. F. Railway Company*, 154 Pac. (Kansas), 248; *State* v. *L. & N. Railway Company*, 72 So. (Ala.), 494; *Goodnow Coal Co.* v. *Northern Pacific Railway Co.*, 162 N. W. (Minn.), 519; *Leiper* v. *Baltimore & Pacific Railroad Co. et al.*, 105 Atl. (Penn.), 551.

We submit that these authorities and cases referred to in the opinions of the court must convince this Honorable court that the classification and tariffs must be followed in the execution of any binding contract, and any contract ignoring the classification and tariffs must be held illegal and void, and otherwise the tariffs and classification would fail to serve the public interest as intended by the legislative authority.

That the so-called contract here involved did not follow the classification and tariffs is conceded in the testimony, as well as appearing on the face of the contract itself.

The contract, which was made, as shown by the bill of lading was a legal contract made in conformity to the tariff, and this contract was not breached. It described the shipment as crockery and no crockery was lost. The illegal contract sought to be shown by parol testimony ignored the tariff and undertook to bind the carrier to transport articles in violation of the tariff provisions. Thus, we have evidence in this record showing the execution of a perfectly valid and binding contract which was fully performed, and evidence tending to establish an illegal and void contract, which was not performed. The judgment was rendered against the appellant, as for breach of the illegal contract.

We respectfully submit that the only judgment, which could have been properly rendered was a judgment sustaining the legal contract, and since the legal contract was not breached, there could be no recovery.

Summing up our contentions, we maintain that the oral testimony to vary and contradict the bill of lading was incompetent under the unbroken chain of decisions of this state, governing the introduction of parol testimony to contradict a written instrument.

Even if parol testimony was properly admitted to establish a special contract, the special contract was not executed, unless and until it was endorsed on the bill of lading, and this was not done. The special contract could not have been executed under any circumstance, because such contracts were prohibited by the classification and tariffs of the carriers, on file with the Mississippi Railroad Commission and the Interstate Commerce Commission, at the time this shipment moved.

It necessarily follows from these contentions that the judgment of the court below should be reversed and suit dismissed.

*S. L. Dodd* and *Mayes & Mayes,* for appellee.

There are a great many authorities holding that it is unlawful for a railroad company to accept for interstate shipment any article for which there is not a fixed rate given in the published tariffs provided by the interstate commerce commission. But all of these decisions turn upon a special provision of the interstate commerce Act; and the authority for so holding in the case of interstate shipment is found in the interstate commerce Act, which act, of course does not apply to intrastate shipment, such as the one involved here that act and the decision thereunder cannot be resorted to by this court in determining what would be the liability of the railroad company in the case at bar.

By the terms of the interstate commerce act, railroad companies are especially forbidden to transport any arti-

cle for which there is not an approved and published rate; but there is no such inhibition in the Mississippi laws relating to intrastate shipments.

The provisions of interstate commerce act above referred to is as follows: "No carrier, unless otherwise provided by this act shall engage or participate in the transportation of passengers or property as defined by this act, unless the rates, fares, and charges upon which the same are transported by said carrier have been filed and published in accordance with the provisions of this act; nor extended to any shipper or person any privileges or facilities in the transportation of passengers or property, except such as are specified in such tariffs.

There is no such provision as this in the Mississippi laws. It is true that section 7627 of Hemingway's Code, impose upon the railroad company the duty of filing their rates or tariffs with the railroad commission and to submit to a revision and approval of the same; but neither this section nor any other section forbids the railroad company to accept freight for the transportation of which no rate has been published. If the railroad company has been remiss in its duty to name and submit to the commission and publish a rate for transporting jewelry, its neglect in that regard cannot be imputed to the shippers of jewelry nor can they in any wise be penalized for the same and deprived of their right to recover from the railroad company the value of their property which has been stolen while in transit.

We beg to call the court's attention to the fact that while it is true our opponents are in court contending that the published tariffs, number (2), forbids the transportation of jewelry by freight, yet there is nothing in the record upon which to base such a contention. In the first place tariff number (2) has not been introduced in evidence in this case and is not to be found in the records, and therefore this court has no means of knowing what tariff number two (2) forbids and what it permits; and in the second place, even if there was anything in the tariff number two (2) as, promulgated by the railroad commission, which

forbids the transportation of jewelry by freight, such a provision would have absolutely no force or effect in law, and that is true because the statute laws of the state, which are of no higher dignity than the rules of the railroad company and the orders of the railroad commission, expressly provided that the railroads are public highways over which all property has an equal right to be transported. Even if the railroad commission had ruled that railroads should not transport an article in intrastate shipment for which there was no published rate, that ruling would be in conflict with section 7624 of Hemingway's Code.

So, the court will see that our opponents are wrong when they say that the railroad company could not lawfully accept this jewelry for intrastate shipment. On the contrary, it could not lawfully decline to accept it. Therefore, our opponents' contentions are wholly untenable. They showed that tariff number two (2) did not contain a rate on jewelry, but there was no proof that tariff number two (2) or any other tariff or any order of the railroad commission or any statute relating to intrastate shipments forbid the shipment of jewelry by freight, but that on the contrary, the general statutes forbid the railroads companies to decline to ship it.

It was contended by the railroad company in the court below that King had made misrepresentation to the depot agent as to the contents of the box and that owing to these misrepresentations the railroad company was prevented from taking such precautions as would have prevented a robbery and that because of those misrepresentations and the consequent inability of the railroad company to know the danger and to guard against the loss, King will be deprived of all right to recover for the lost articles. But these contentions of our opponents cannot be maintained here in view of the decision of the Mississippi supreme court in the case of *M. J. and K. C. R. Company* v. *Philips and Company,* and the proven fact of the case at bar.

In the case of *M. J. and K. C. R. Company* v. *Philips*

*and Company,* 60 So. 572, our court said: "A misrepresentation by a shipper as to the contents of a freight shipment to obtain lower rates did not invalidate the contract of shipment nor prevent a recovery from the carrier for the loss of the shipment, where such misrepresentation did not contribute to the loss by misleading the carrier as to the precautions required for its safe transportation."

Our opponents next contend that King is trying by parol evidence to change the terms of a written contract; but we say that there is nothing of this kind in this case. The rules about varying written contracts by parol evidence do not apply at all in a case of this kind. It is our opponents' contentions that the word "crockery" as it appears in this bill of lading shows that the railroad company agreed to transport a box containing crockery, and crockery only. But all of the evidence and circumstances of this case shows that such was not the intentions or the limit of the undertaking of the railroad company. The facts of this case are that at the time this box was offered for shipment it was sitting on the floor of the depot right there before King and the depot agent, and that a full and complete statement was made by King to the depot agent in which King advised the depot agent that the box contained crockery, watches, lockets, rings and other jewelry, and the depot agent was then and there informed as to the value thereof; that the depot agent undertook on behalf of the railroad company to transport these articles and all of them safely and to deliver all of them to King at Koscusko. That when the depot agent undertook to make out the bill of lading giving the shipment it was not his aim to make the bill of lading state the whole contract of shipment to the extent that each and every article composing this shipment would be specifically described and listed in the bill of lading, but for convenience sake and to save time and to serve merely as a mark of identification, the agent, as was his general practice in such case, merely bunched the description and selected the one word crockery as a convenient and sufficient mark of identification

and description of the shipment; and that he, the agent, marked the box "crockery."

Our opponents say next that the shipment of jewelry by freight or the shipment of any article for which there is not a published tariff is especially forbidden by section six (6) of the bill of lading. But as to that our opponents are wrong. In the first place there is nothing in paragraph six, that shows that it was intended to apply to jewelry. Paragraph six is too vague and indefinite in its terms to make it effective at all. The words of section six are:

"No carrier will carry or be liable in any way for any documents, specie or any article of extraordinary value not specifically rated in the published classifications or tariffs, unless a special agreement to do so and the stipulated value of the articles are endorsed hereon."

Of course, jewelry is not documents or specie and cannot be included in those terms. The other term, articles of extraordinary value, is too vague and indefiinite to accurately describe anything, because no stardard is given for the measurement of the value. Extraordinary value as compared with what? a one hundred ninety-five dollar watch is not of extraordinary value as compared with a one hundred thousand dollar race horse. Since no criterion is given for the measurement of values it cannot be determined whether any specific article, jewelry or what not, is of extraordinary value; and therefore it cannot be said with any degree of certainty that this section six applies to jewelry.

But, be that as it may, section six, if not expressly, does impliedly provide that articles not rated may be transported under special contracts made by the agent. It is true that section six (6) also provides that the special contract should be endorsed on the back of the bill of lading. But it is perfectly manifest that the endorsement of the special contract on the bill of lading is a thing which can be waived by the agent. It is perfectly manifest that the depot agent is the general agent of the railroad company for the purpose of making these special contracts for

the shipment of goods not rated and if he is the general. agent for that purpose he may waive the provision about endorsing the agreement on the back of the bill of lading. And, since in this case the depot agent was fully advised of the contents of this shipment and as to the value thereof and agreed that the railroad would receive and transport it safely and he fixed and received compensation. therefor on behalf of the railroad company and omitted to endorse this on the back of the bill of lading if such indorsement was necessary, he will be held to have waived the provision as to the endorsement and his principal, the railroad company, will be bound by that waiver.

So in conclusion we say that in view of the established facts of this case as those facts are conclusively established by the verdict of the jury which has settled all conflicting testimony in King's favor and in view of the fact that the proof is conclusive that at the time the box was offered for shipment the depot agent was fully advised as to its contents and as to the value thereof and then received the box for shipment and collected the freight for same, and the company permitted the box to be robbed of valuable articles or lost therefrom, it would be the greatest injustice in this case to deny King the right to recover the value of his lost property.

ETHRIDGE, J., delivered the opinion of the court.

The appellee, King, sued the railroad company for the loss of a package, or the contents from a package, shipped by freight and marked "crockery," which contained jewelry and other articles of value which are not usually shipped by freight. The defendant filed two pleas, one denying that it was guilty of the trespass and wrongs complained of, or any part thereof, and the other denying that it undertook or promised in the manner and form as plaintiff hath complained of.

The principal defense is that the agent of the railroad had no authority to contract so as to bind the company,

because it had no tariff specifically providing for the transportation of jewelry; it being contended that the railroad company was not entitled or authorized to transport jewelry and articles of unusual value by freight, because no tariff specifically providing for transportation charges for such articles had been filed with the Interstate Commerce Commission or the State Railroad Commission. It is also contended that the plaintiff was not entitled to recover because the bill of lading issued to him described the property as "crockery," and there was nothing in the bill of lading to indicate that the box contained articles of unusual value or any other articles than crockery.

The plaintiff testified that he went to the station agent and disclosed to him the true contents of the box and the value of the articles, and asked if he could take and be responsible for the goods, and, if not, that he would have carried them back home, and that the agent told him that he would. The plaintiff testified that the express office was closed, and that with full knowledge of the contents of the box the agent of the railroad company marked the box "crockery." When the box reached Kosciusko, some wire which had been used in wrapping the box had been cut, broken, or removed, and the plaintiff contended that the contents of the box had been removed, at least some jewelry, described in the suit; while the railroad company's agent at Kosciusko contended that, while the box had been apparently opened, or the wire wrapping removed, that he examined the contents of the box at the request of the plaintiff and found each article which plaintiff then contended had been shipped in the box. There was a verdict for the plaintiff for one hundred fifty-six dollars and twenty cents, which was one-half of the amount sued for, and from this judgment this appeal is prosecuted.

The bill of lading under which the goods were shipped contained, among other provisions, the following:

"No carrier will carry or be liable in any way for any documents, specie, or for any articles of extraordinary value not specifically rated in the published classification

or tariff, unless a special agreement to do so, and the stipulated value of the articles are indorsed hereon."

It is contended by the appellant that, inasmuch as the items sued for are not specifically listed in the bill of lading, and inasmuch as the special agreement with the agent was not noted on the bill of lading, that there can be no recovery by reason of this provision of the contract. The appellant relies upon a number of cases predicated upon the Acts of Congress and the tariffs and classifications approved by the Interstate Commerce Commission. Under the federal law applicable to interstate commerce, a carrier is prohibited from carrying any article unless its tariff for so doing has been filed with and approved by the Interstate Commerce Commission. One provision of the Interstate Commerce Act provides:

"No carrier, unless otherwise provided by this act, shall engage or participate in the transportation of passengers or property, as defined in this act, unless the rates, fares, and charges upon which the same are transported by said carrier have been filed and published in accordance with the provisions of this act; . . . nor extend to any shipper or person any privileges or facilities in the transportation of passengers or property, except such as are specified in such tariffs." U. S. Comp. St. section 8569 (7).

Of course, so far as interstate commerce is concerned, this act controls, and a carrier cannot lawfully carry in interstate commerce articles unless it has filed its tariff with the Interstate Commerce Commission. But the tariffs of the Interstate Commerce Commission and the form of contracts approved by the Interstate Commerce Commission are not binding upon the states as to intrastate commerce.

The shipment in question in this suit moved wholly in intrastate commerce, and is governed entirely by the laws of this state. Under section 184 of the state Constitution, it is provided that:

"All railroads which carry persons or property for hire shall be public highways, and all railroad companies so engaged shall be common carriers," etc.

By section 4839, Code of 1906 (section 7624, Hemingway's Code), it is provided:

"The track of every railroad which carries persons or property for hire is a public highway, over which all persons have equal rights of transportation for themselves and their property, and for passengers, freight, and cars. on the payment of reasonable compensation to the railroad for such transportation; and if any railroad corporation, or person managing a railroad, shall demand and receive unreasonable compensation for the service rendered in the transportation of passengers or freight, or more than allowed by the tariff of rates fixed by the Commission, or by such person or corporation with its approval, or more than the rates specified in a bill of lading issued by authority of the railroad; or if any railroad shall, for its advantage, or for the advantage of a conencting line, or for that of any person, locality, or corporation, make any discrimination in transportation against any person, locality, or corporation, unless authorized by the Commission; or if any railroad company shall charge more for a short haul than for a long one, under substantially similar circumstances and conditions, without the sanction of the Commission, such person or corporation, in either case, shall be guilty of extortion, and may be punished therefor criminally, besides being liable civilly."

By section 4091, Code of 1906 (section 6720, Hemingway's Code), a railroad company in this state has power to do an express business over its line or lines of railroad. Under section 4842, Code of 1906 (section 7627, Hemingway's Code), it is made the duty of every railroad or the common carrier to furnish to the Commission its tariff of charges for transporting passengers and freight, and it is made the duty of the Commission to revise, fix, and regulate the charges so as to allow reasonable compensation to the railroad company for the services to be rendered.

But the railroad company is not prohibited by these statutes from making a contract for the carriage of goods either by freight or express where no tariff has been filed. Of course, it is its duty to file its tariff of charges, as soon as they are fixed, with the Commission for approval and for revision in proper cases. But in case through oversight or for other reason the railroad company has not promulgated and filed a tariff for the carriage of particular articles, it is not prohibited from carrying such articles for reasonable compensation, but under the statutes above referred to making it a highway, it is under obligation to transport any property that may be moved over a highway without danger or damage to other persons or property, for reasonable compensation. It has, by the law of the state, the power to do an express business, and under this, of course, it may move and transport such articles as are usually transported by express, and fix reasonable charges therefor. Such charges, of course, to be subject to revision by the railroad commission. None of the articles involved in the present shipment are prohibited from being transported, and are not dangerous to either person or property, and the railroad company had the right to contract for their transportation.

The station agent represents the railroad company in making contracts for the carriage of property, and we see no reason why he could not make the contract involved here. There is a dispute between the plaintiff and the agent of the defendant as to the facts as to what was said and done at the time the goods were tendered for shipment, and as to their condition when taken from the railroad, and as to the condition of the shipment when inspected by the plaintiff. But all these questions have been settled by a good and lawful jury. The judgment will therefore be affirmed.

*Affirmed.*